A91A0401. BERINGAUSE v. FOGLEMAN TRUCK LINES, INC.
et al.
(409 SE2d 524)

CARLEY, Judge.

Appellant-plaintiff's husband was killed when his police car was struck by a truck that was owned by appellee-defendant Fogleman Truck Lines, Inc., and was being operated by appellee-defendant Placide Boucher. Appellant's wrongful death action was tried before a jury and resulted in a verdict in favor of appellees. She appeals from the judgment entered by the trial court on the jury's verdict.

1. Appellant enumerates as error the denial of her motions for a directed verdict and for judgment notwithstanding the verdict as to the issue of appellees' liability.

Pursuant to a plea bargain, appellee Boucher had pled guilty to the criminal offense of homicide by vehicle in the second degree. At the trial of the instant civil action, however, he offered an explanation for his decision to withdraw his original not guilty plea and to accept the plea bargain. See *Thompson v. Hill*, 143 Ga. App. 272, 275 (3) (238 SE2d 271) (1977). Moreover, there was evidence to authorize a finding that, immediately prior to the collision, appellee Boucher had been confronted with a sudden emergency when the preceding car, which had only one operating brake light, had slowed in apparent reaction to the oncoming convoy of vehicles in which appellant's decedent was a participant. "The rule of sudden emergency is that one who in a sudden emergency acts according to his best judgment, or who because of want of time in which to form a judgment, acts in the most apparently judicious manner, is not chargeable with negligence. [Cits.]" *Barlow v. Veber*, 169 Ga. App. 65, 66 (1) (311 SE2d 501) (1983). " ' "Whether an emergency existed or not, that issue, like all questions of diligence, negligence, contributory negligence and proximate cause except in plain and indisputable cases, was a question for determination by the jury." (Cit.)' [Cit.]" *Barnebee v. Shasta Beverages*, 184 Ga. App. 435, 436 (361 SE2d 704) (1987). Likewise, the record demonstrates the existence of a jury question as to whether the proximate cause of the collision was the negligent failure of appellant's decedent to have avoided it. "[O]ne who becomes aware of the negligence of another, or in the exercise of ordinary care should have become aware of it under circumstances where he could avoid it is himself guilty of negligence in failing to exercise ordinary care to avoid the negligence of the other party." *Anderson v. Williams*, 95 Ga. App. 684, 686 (4) (98 SE2d 579) (1957). "The question of whether or not [appellant's decedent] failed to maintain a reasonable and proper lookout ahead which would have allegedly enabled him to avoid the consequences of [appellee Boucher's] negligence [was for the] jury. ' "What is 'a reasonable lookout' depends on all the circum-

stances at the time and place." ' [Cit.] . . . [I]ssues of negligence should not be dealt with by summary adjudication but should be returned to the rightful province of the jury." *Findley v. McDaniel*, 158 Ga. App. 445, 447 (1) (280 SE2d 858) (1981).

It follows that, notwithstanding appellee Boucher's guilty plea, the trial court correctly denied appellant's motions for a directed verdict and judgment n.o.v. as to the issue of appellees' liability. See *Williams v. Calhoun*, 175 Ga. App. 332 (333 SE2d 408) (1985). Compare *Glenn v. Hutcheson*, 194 Ga. App. 12 (389 SE2d 523) (1989).

2. As a jury question existed with regard to the applicability of the principle of sudden emergency, the trial court did not err in charging on that principle.

3. Likewise, the existence of a jury question as to the negligence of appellant's decedent in failing to avoid the collision authorized the trial court to charge on that issue.

4. Appellant enumerates as error the trial court's giving of a charge on assumption of the risk. Appellees urge that the giving of the charge was authorized by the evidence that appellant's deceased voluntarily participated in the convoy.

Assumption of risk "assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." *Whitehead v. Seymour*, 120 Ga. App. 25, 28 (4) (169 SE2d 369) (1969). However, "[i]t is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. *This is contributory negligence pure and simple; it is not assumption of risk.* . . . [T]he plaintiff has exposed himself to the risk of future harm, but he has not consented to relieve the defendant of any future duty to act with reasonable care. This is a distinction which has baffled a great many law students, some judges, and unhappily a few very learned legal writers." (Emphasis supplied.) Prosser & Keeton, The Law of Torts, § 68, p. 485 (5th ed. 1984).

Accordingly, appellant's deceased may have exposed himself to the risk of future harm by his participation in the convoy. However, his participation in the convoy cannot, "by any stretch of the imagination," be found to evince his "consent" that other drivers not use care to watch for him and avoid hitting his vehicle. On the contrary, by his use of flashing emergency lights, he was insisting that the other drivers use care to watch for him and avoid hitting his vehicle and the other vehicles in the convoy. Thus, participation by appellant's de-

ceased in the convoy might demonstrate his contributory negligence, but it would not evidence his assumption of the risk of being hit in his own lane of traffic by a swerving truck.

In order for appellant's deceased to have assumed the risk of being struck by appellees' truck, there must be evidence that, *after* the truck had swerved into his lane of traffic, he had then made a conscious and voluntary decision to proceed and risk a head-on collision. It would be only then that appellant's deceased had knowledge of the risk of being hit by appellees' truck. " 'Knowledge of the risk is the watchword of assumption of risk.' Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts. 'A defect and the danger arising from it are not necessarily to be identified, and a person may know of one without appreciating the other.' Knowledge of the general danger may not be enough, and some courts require knowledge of the specific risk that caused the plaintiff's harm. *The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence.* If, because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. *His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.*" Prosser & Keeton, The Law of Torts, § 68, p. 487 (5th ed. 1984).

There is evidence that appellant's decedent may have been negligent in failing to have avoided the collision. However, there is no evidence to authorize a finding that appellant's decedent, with full knowledge that appellee Boucher had swerved across the roadway into the lane of on-coming traffic, had nevertheless elected to proceed and had voluntarily assumed the risk of a head-on collision. To the contrary, the undisputed evidence shows that appellant's decedent *had* attempted to avoid the impending collision. If, in the exercise of ordinary reasonable care for his own safety, appellant's decedent could and should have discovered the danger before he actually did and could and should have avoided the collision, then he would have been contributorily negligent, but he would not have assumed the risk. " 'In working out the distinction the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be.' " *Roberts v. King*, 102 Ga. App. 518, 521 (1) (116 SE2d 885)

(1960). To have applied the doctrine of assumption of the risk where, as here, appellant's decedent was struck in his own lane of traffic by a swerving truck, "would require that whenever one drives a motor vehicle on any street or highway he would be subject to the doctrine of assumption of the risk. This is simply beyond the meaning of the [doctrine]." *Myers v. Boleman*, 151 Ga. App. 506, 510 (3) (260 SE2d 359) (1979).

The error in giving the unwarranted charge was not harmless. The evidence did not demand a verdict for appellees, and the jury may well have returned its verdict for appellees on the erroneous premise that the death of appellant's decedent was somehow the result of his own voluntary assumption of the risk. Accordingly, the judgment must be reversed and a new trial held. "Assuming that the evidence presented at the retrial . . . is the same as that which was adduced here, no charge on assumption of the risk should be given." *Meacham v. Barber*, 183 Ga. App. 533, 537 (3) (359 SE2d 424) (1987).

5. The trial court charged the jury that appellees "further allege that [appellant's] decedent . . . was negligent in failing to properly utilize emergency lights. . . ." The giving of this charge is enumerated as error.

There is evidence that appellant's decedent was utilizing the emergency lights on his vehicle in connection with his participation in the convoy. However, there is no evidence to authorize a finding that, in doing so, he acted negligently. It appears that the only role that the emergency lights in specific and that the convoy in general may have played in the actual collision is that the emergency lights and convoy apparently caused the driver who was preceding appellee Boucher's truck to slow his vehicle. Thus, the emergency lights and convoy may have been the original precipitating factor in the creation of the sudden emergency which appellee Boucher ultimately confronted when the preceding driver slowed. However, the mere employment of emergency lights in connection with participation in the convoy would not be an act of contributory negligence on the part of appellant's decedent. The jury could find that the employment of emergency lights was distractive, but not negligently so.

It follows that the charge regarding appellees' "contention, unsupported by the evidence, was not accurate. Perhaps this alone might not require a new trial, but on a new trial the presiding judge should omit a statement which might be injurious to [appellant], if the evidence does not warrant it." *Georgia & Fla. R. v. Thigpen*, 141 Ga. 90, 95 (3) (80 SE 626) (1913).

6. Appellant's remaining enumerations of error relate to the trial court's charge or recharge. These enumerations need not be specifically addressed as they either relate to matters not likely to recur at retrial or have no merit for reasons previously discussed in this opin-

ion.

*Judgment reversed. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Pope and Cooper, JJ., concur. Banke, P. J., Beasley and Andrews, JJ., dissent.*

BEASLEY, Judge, dissenting.

1. I respectfully dissent because the trial court did not err in charging the jury on assumption of the risk, the ruling on which is made in Division 4 of the majority opinion.

The court's charge, which was nearly verbatim the pattern charge, was: "When a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, he or his predecessor cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of such other person."

Defendants' theory with respect to this principle was not that plaintiff's decedent failed to avoid the risk when the tractor-trailer swerved across the roadway into his lane. I agree that the liability principle which applies at that time is avoidance, not assumption. The distinction is important as the two concepts have different meanings and bear different consequences. For one thing, assuming the risk is a complete bar to recovery. *Atlantic Coast Line R. Co. v. Street,* 116 Ga. App. 465, 466 (1a) (157 SE2d 793) (1967). See *Newman v. Collins,* 186 Ga. App. 595, 596 (1a) (367 SE2d 866) (1988) (physical precedent).

Defendants' theory, on the other hand, was that plaintiff's decedent created, or helped to create, a hazardous situation and then participated in it with knowledge that it was causing danger, thus assuming the risk of injury to himself. The hazardous situation was the conducting of a convoyed caravan of two buses and three campus police cars down a two-lane highway, straddling the occasional passing lane so no other vehicles could intervene or pass, sometimes exceeding the speed limit, and using flashing blue lights on the lead and last vehicles, the decedent's being the last. There was evidence that this operation prompted some oncoming vehicles which were using the highway to stop or slow or pull off as the caravan travelled the more than 20-mile route. This reaction of oncoming vehicles was observable to drivers of vehicles behind the caravan, who were blocked by it from passing. The danger was in causing other vehicles to react to the caravan, which reactions in turn endangered others including plaintiff's decedent. This is exactly what happened.

There was evidence that, in essence, a white car traveling in front of the tractor-trailer suddenly stopped on the highway when it came

upon the caravan, prompting the defendant driver of the tractor-trailer to brake and leading ultimately to the collision. The question is whether the evidence was sufficient to present for jury consideration the defendants' theory that a hazard or danger was created by the caravan and its time and manner of operation, including the use of flashing blue lights on the police cars, when other traffic was proceeding towards it and behind it on the roadway, and that the policeman assumed the risk of injury to himself by participating in what he knew or should have known was an unnecessarily hazardous activity.

"Assumption of risk in its simplest and primary sense means that the plaintiff has given his express consent to relieve the defendant of an obligation of conduct toward him and to take his chance of injury from a known risk. 'The result is that the defendant is simply under no legal duty to protect the plaintiff . . .' 'assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it' . . . the basis of the doctrine of assumption of risk is that a party assumes the risk of danger which he knows and appreciates or that the law will hold that he does know and appreciate." *Roberts v. King*, 102 Ga. App. 518, 521 (1) (116 SE2d 885) (1960). "In order for a defendant to invoke the doctrine of assumption of the risk it must be established that the plaintiff deliberately chose an obviously perilous course of conduct and fully appreciated the danger involved. [Cit.]" *Owens-Illinois, Inc. v. Bryson*, 138 Ga. App. 78, 79 (225 SE2d 475) (1976).

The majority concludes as a matter of law that the convoyed caravan did not constitute a danger or hazard posing a risk, such that assumption of the risk can apply. But the situation is not subject to a legal conclusion that it did not constitute a danger or hazard. There was some evidence that it did. This included uncontested evidence that flashing blue lights were in use on the police vehicles including the decedent's, which the jury could find inferred to oncoming traffic that an emergency existed. See in this connection OCGA § 40-6-6. The question of whether the caravan created a danger is one of fact for the jury to decide, not the appellate court. See, for example, *Center Chemical Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975); *Parzini v. Center Chemical Co.*, 136 Ga. App. 396, 399 (6) (221 SE2d 475) (1975). "It is the general law of this state that questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly issues for jury resolution, and a court should not remove the issue from the jury except in plain and indisputable cases. [Cit.]" *Campbell v. Forsyth*, 187 Ga. App. 352, 355 (1) (370 SE2d 207) (1988). This general law embraces the defense of assumption of risk, *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899) (1985), which like the questions of negligence, diligence, and contributory negligence involves measurements of behavior. The situa-

tion in the present case is not plain and indisputable.

The doctrine of assumption of risk is applicable to a self-created danger, such as in this case, as well as to one created by a third party. An example of the former is found in *Newman v. Collins*, supra, and an example of the latter appears in *Deere & Co. v. Brooks*, 250 Ga. 517 (299 SE2d 704) (1983).

" 'A charge is proper if there is any evidence authorizing it.' *Joyce v. City of Dalton*, 73 Ga. App. 209 (2) (36 SE2d 104) (1945)." *Kent v. Henson*, 174 Ga. App. 400, 402 (2) (330 SE2d 126) (1985). The court did not err in giving the charge.

2. With respect to Division 5, the court's instruction to the jury regarding merely what defendants contended in their defense is not reversible error in this case, if error it was, which I cannot concede. The defendants had requested a charge concerning improper use of emergency lights, but the trial court did not give it.

Moreover, when the jury during its deliberations requested recharge on certain points, counsel for plaintiff stated: "We would ask that you also give the same charge you gave yesterday with regard to the flashing blue lights in that their question touches on the negligence of the caravan [which] would necessarily indicate they have some question about that and I think the flashing blue lights is the negligence of the caravan." The court refused to do so. Having specifically asked for it to be repeated, appellant cannot complain on appeal that it was given the first time.

ANDREWS, Judge, dissenting.

I must respectfully dissent. The majority's analysis by label (assumption of risk) is inappropriate and incorrect. By whatever label, the charge at issue correctly states a principle of Georgia law. *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665 (88 SE2d 6) (1955). There was evidence to support the jury's application, if it so chose, of the rule. Accordingly, it was not error for the trial judge to give the charge.

I join in Judge Beasley's dissent with respect to Division 5. I am authorized to state that Presiding Judge Banke joins in this dissent.

DECIDED MAY 15, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 —

*C. Lawrence Thompson, Fletcher Thompson*, for appellant.
*Alembik, Fine & Callner, Lowell S. Fine, G. Michael Banick*, for appellees.